HALL v. SCHNEIDER. See Case No. 11,-952.

---

## Case No. 5,945.

### HALL v. SCOVEL.

[10 N. B. R. 295.][1]

District Court, E. D. Tennessee. 1874.

BANKRUPTCY—TITLE OF ASSIGNEE TO LANDS PARTLY PAID FOR—RIGHT OF PURCHASER TO RENT AFTER ASSIGNEE'S SALE.

1. Where a bankrupt owned property which he had only partly paid for, and left the possession

[1] [Reprinted by permission.]

and rent of it in the seller, under an agreement that the seller was to apply the rent in the reduction of the purchase-money; this does not convey such an interest in the property back to the vendor, as will prevent the full title from vesting in the assignee in bankruptcy.

2. Where property is sold by an assignee in bankruptcy without an order of the court, the purchaser will be entitled to the rents and profits of the property from the day of sale, and not from the day of confirmation of the sale by the court.

Before JOHN RUHM, Register.

From the petition, and answer, and the proof, I report as follows:

First. The defendant, H. G. Scovel, has collected the rents of the land described in the pleadings since the 19th of February, 1868, the day of adjudication, to the 1st of January, 1873, and for a period of three months in the year 1873, at the rate of ten dollars per month, being in all the sum of six hundred and thirteen dollars and thirty-three and one-third cents.

Second. The sale of the property by the assignee took place on the 15th day of September, 1870, but it has never been confirmed by the court. Defendant Scovel collected three hundred and nine dollars to date of sale, and three hundred and four dollars and thirty-three and one-half cents since said date.

Third. Defendant Scovel received the rents since the adjudication as he had before the bankruptcy. It appears that William Dismukes, the father of D. J. Dismukes, but who was not the authorized agent of the latter (D. J. Dismukes, the bankrupt), met Scovel some time in 1867, upon the street. The elder Dismukes told Scovel in that conversation, in response to Scovel's statement, that he had an opportunity of renting the lots; that his son, the bankrupt, was absent South, and that he, the father, would agree for the son, that the rent should go to a credit on the notes for the unpaid purchase-money. The said elder Dismukes further states, that he does not remember ever having mentioned the subject to his son after his return, and before the bankruptcy. The son, D. J., the owner of the lots, denies that his father was his agent for the lots, or that he ever consented to or knew of the agreement. The assignee expressly alleges in his petition, that on his being appointed assignee, he called on Scovel and had an interview with him in regard to the lots, and as to the advisability of a sale, and further, that he placed the lots in the hands of Scovel as real estate agent, with instructions to offer them for sale and collect the rents. Scovel, in his answer, admits that the assignee called to see about the sale of the lots, but denies that he agreed to collect the rents as agent of said assignee; he further says, respondent, by no word or act, promised to pay one dollar of rent to him. In his deposition, Scovel reiterates the averments in his answer, and adds, that owing to length of time elapsed since his conversation with assignee, he does not remem-

ber what was said. In the absence of any proof to the contrary, the allegations in the petition, which are not denied, must be taken as true. While Scovel denies having agreed to collect the rents, as agent of the assignee, he does not deny the allegation of the assignee, to the effect that he (the assignee), placed the lots in Scovel's hands for sale, and to collect the rents as real estate agent. Scovel moreover states, that the assignee has paid the taxes accruing since the bankruptcy. I therefore report, that Scovel received the rents after the adjudication without an express agreement on his part to collect them as agent, but with notice from the assignee that he claimed the rents and profits of the land for the benefit of the general creditors, and with notice of the bankruptcy.

Fourth. The sale of the property was postponed by the assignee at the instance of H. G. Scovel, who represented to the assignee that it was an unfavorable time; when the sale was finally made it was done by consent of said Scovel and with his approval.

Fifth. In the absence of proof I report that H. G. Scovel is entitled, as real estate agent, to a commission of 10 per cent. on the rents collected since the adjudication, that being the customary commission paid in the city of Nashville.

Sixth. I am clearly of opinion, from the facts as they appear, that the assignee is entitled to the rents since the filing of the petition to the time of the confirmation of the sale to Scovel. The proof does not show to me that the elder Dismukes was the agent of D. J. Dismukes, the bankrupt. It does not show that Scovel had any authority from the latter to apply the rents collected for a credit on the notes. But having reduced the rents so collected to possession, he is, of course, as far as the rents before the bankruptcy are concerned, entitled to set them off on the notes due him. When the said Dismukes was declared a bankrupt, all his property, of whatsoever nature, real, personal, and mixed, choses in action, equitable and legal estates, became vested in the assignee, and the assignment relates back to the day of the filing of the petition by operation of law. Now even if the elder Dismukes were the authorized agent of Dismukes the bankrupt, even if he had authority to agree with Scovel, that the rents by him collected should go to the payment of the purchase-money pro tanto, such agreement, voluntary and gratuitous as it was, if it existed at all, could be determined at the pleasure of the grantor, but the proof does not show that he was the authorized agent. Nor does it show that even the agreement of the father was made to last forever, or that it should not be recorded. I am of opinion that with the assignment, the agreement, if it existed, terminated, that the rents and profits of the land vested in the assignee, that the assignee had not even the right in law to agree that the old agreement should continue, if ever such agreement ex-

isted. But, moreover, he gave Scovel notice that he claimed the rents, and that certainly ends the controversy. It is insisted by defendant that he had an equitable lien on the profits of the land by virtue of the vendor's lien, especially retained in the deed. It is further insisted by defendant's counsel, that being in possession of the land his case was analogous to that of a mortgagee in possession, who was only liable to account for the rents when a bill to redeem is filed. But that is clearly erroneous. Had Scovel before the bankruptcy filed a bill in the state court to foreclose the lien, and had he alleged therein that the land was not sufficient to pay his debt, and asked for the appointment of a receiver, he would, under the state law, from the date of the filing of the bill have been entitled to a lien on the rents. But he did not choose to foreclose, and waited until the assignee insisted on a sale; he has therefore no lien except that to which he is entitled as the vendor of the property. Nor was he in possession; the land consists in a vacant, unimproved tract. The assignee came into constructive possession as soon as he gave notice to the vendor, or as soon as the assignment was executed. The sale by the assignee is a judicial sale. The owner of land sold at a judicial sale is not entitled to receive the rents until confirmation; the result is, that the assignee is entitled to all the rents collected by Scovel since the filing of the petition, less ten per cent. commission as real estate agent.

Seventh. I further report that there was due Scovel, as purchase-money on the lots, on the date of filing of the petition, as follows:

| | |
|---|---:|
| Whole amount of purchase-money.. | $2,000 00 |
| Payment on account.............. | 500 00 |
| | $1,500 00 |
| Interest from day of sale to day of filing the petition................. | 718 75 |
| Total ....................... | $2,218 75 |

The solicitor for defendant has insisted in argument on the following averments in his answer as a plea of the statute barring actions by assignees, if not brought within two years from the time in which the cause of action accrued. On the contrary, the petitioner, as assignee of Dismukes, has lain by for a period of over two years without notifying respondent that he would have to account for the rent. The order of reference does not contain a direction to me to report on this subject. But being called upon by both parties to give my opinion thereon, I decide that this casual averment in the answer is not a sufficient plea of the statute. It does not, moreover, appear, that the assignee did give the defendant notice immediately on his appointment and after the assignment was executed.

I have also been called upon by the parties to state my opinion on that part of the petition, praying that the sale to Scovel be set

aside for the reasons as set out in the petition. Property belonging to the estate of a bankrupt, upon which there is a lien, can only be sold by the assignee upon application to the court, and upon notice thereof to the party claiming the lien. It is true, in this case there was an order of court; but the lien holder (Scovel) is the only person who can object to the sale. He is satisfied and gave his consent to the sale. The assignee is estopped from going back on his act done by his consent and approval of Scovel. He must execute a deed to Scovel as soon as the court confirms his report of sale. Scovel will be suffered to prove the balance due him after giving credit for his bid of one thousand dollars, and all other credits against the estate of the bankrupt.

TRIGG, District Judge. The report of the register is confirmed in all things, except this, that the owner of the land is entitled to the rents until the day of sale to Scovel, and not till the day of confirmation of the sale. The purchaser at assignee's sale takes the rents accrued since the day of sale. Decree for assignee accordingly, with costs against the defendant. The sale to Scovel is confirmed.